BRIAN WRIGHT C.D.C. #AM9524 - C/O:
_____
NAME

Frank Duncan, Atty., SB#25865 Tel: 2136214060
_____
PRISON IDENTIFICATION/BOOKING NO.

880 W. 1st St., Ste 602, Los Angeles, CA 90012
_____
ADDRESS OR PLACE OF CONFINEMENT

CLF-SHAFTER 1150 E.Ash Av., Shafter, CA 93263
_____
Note:   It is your responsibility to notify the Clerk of Court in writing of any
        change of address. If represented by an attorney, provide his name,
        address, telephone and facsimile numbers, and e-mail address.



FILED
CLERK, U.S. DISTRICT COURT

JUN 1 2 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

*Fee Paid*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BRIAN WRIGHT C.D.C. #AM 9524
_____
FULL NAME (*Include name under which you were convicted*)

                                    Petitioner,

v.

WARDEN, C.D.C., CCF-SHAFTER, California Dept. of
Corrections
_____
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

                                    Respondent.

CASE NUMBER:

CV 15 - 0 4 4 9 7 - ODW (JPR)
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**
28 U.S.C § 2254

PLACE/COUNTY OF CONVICTION  Los Angeles, CA
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(*List by case number* )
CV _____
CV _____

LODGED
CLERK, U.S. DISTRICT COURT

JUN - 8 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a difference California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum. the grounds for relief from the conviction and/or sentence that you challenge.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.   When you have completed the form, send the original and two copies to the following address:
        Clerk of the United States District Court for the Central District of California
        United States Courthouse
        ATTN: Intake/Docket Section
        312 North Spring Street
        Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☑ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue

    a. Place of detention  CCF-Shafter, 1150 East Ash Avenue, Shafter, CA 93263  (Kern County, CA)

    b. Place of conviction and sentence  Los Angeles County, CA   Sentence: 31-years-to-Life

2. Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked).*

    a. Nature of offenses involved *(include all counts)* :   2d Degree Murder;  Personal Use of a Deadly Weapon (a hamme

    b. Penal or other code section or sections:  P.C. Section 187; Special Allegation: P.C. Section 12022(b)(1)

    c. Case number:  BA358919

    d. Date of conviction:  9-23-2010

    e. Date of sentence:  9-23-2010

    f. Length of sentence on each count: Count 1- 15-Years-to-Life

    g. Plea *(check one)* :
       ☑ Not guilty
       ☐ Guilty
       ☐ Nolo contendere

    h. Kind of trial *(check one)* :
       ☑ Jury
       ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?     ☑ Yes   ☐ No

    If so, give the following information for your appeal *(and attach a copy of the Court of Appeal decision if available)*:

    a. Case number: B228640

    b. Grounds raised *(list each)*:

       (1)  Right to Trial by Jury Abrogated

       (2)  Denial of 5th and 14th Amendment  (U.S. Constitution) due process of law and a fair trial

     (3) Missapplication of Batson-Wheeler: (Batson)(1986) 476 U.S. 79; (Wheeler) (1978) 22 Cal.3d 258

     (4) _____

     (5) _____

     (6) _____

  c. Date of decision:   04-04-2012

  d. Result     Affirmed

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?   ☑Yes   ☐No

  If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

  a. Case number:   S202433

  b. Grounds raised *(list each)*:

     (1) Right to Jury Trial Abrogated

     (2) Denial of 5th and 14th Amendments (U.S. Const.) due process of law and fairness

     (3) Missapplication of Batson-Wheeler: (Batson)(1986) 476 U.S. 79; (Wheeler) (1978) 22 Cal.3d 258

     (4) _____

     (5) _____

     (6) _____

  c. Date of decision:   Petition Granted 5-21-2014 ; Petition Dismissed on 7-29-2014

  d. Result   Petition denied 7-29-2014

5. If you did not appeal:

  a. State your reasons _____

  _____

  _____

  _____

  _____

  b. Did you seek permission to file a late appeal?   ☐Yes   ☐No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?   ☐Yes   ☑No

  If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

  a. (1) Name of court: _____

     (2) Case number: _____

     (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?  ☐ Yes  ☐ No

b.  (1) Name of court: _____

  (2) Case number: _____

  (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

  (4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

  (5) Date of decision: _____

  (6) Result _____

_____

  (7) Was an evidentiary hearing held?  ☐ Yes  ☐ No

c.  (1) Name of court: _____

  (2) Case number: _____

  (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

  (4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?       ☐Yes ☐No

7.   Did you file a petition for certiorari in the United States Supreme Court?       ☐ Yes   ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

8.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:    *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a.   Ground one: Right to Jury Trial Abrogated _____

(1) Supporting FACTS:  See Addendum to Petition _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?       ☑ Yes    ☐No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☑ Yes    ☐No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?      ☐Yes    ☑No

b.   Ground two:  Denial of 5th and 14th amendments (U.S. Constitution) due process of law and fairness _____

(1) Supporting FACTS: See Addendum to Petition _____

_____

_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☑ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☑ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☑ No

c. Ground three: Missapplication of Batson-Wheeler: (Batson (1986) 476 U.S. 79; Wheeler (1978) 22 Cal.3d 258

(1) Supporting FACTS:  See Addendum to Petition
_____
_____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☑ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☑ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☑ No

d. Ground four: _____
_____

(1) Supporting FACTS: _____
_____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☐ No

e. Ground five: _____
_____

(1) Supporting FACTS: _____
_____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes   ☐ No

9. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes   ☑ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available):*

a.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing):* _____

(4) Grounds raised *(list each):*

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?   ☐ Yes  ☐ No

b.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing):* _____

(4) Grounds raised *(list each):*

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to
this judgment of conviction?    ☐ Yes ☑ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?    ☑ Yes ☐ No

If so, provide name, address and telephone number:  Frank Duncan, Attorney,  SBN 25865

880 West First Street, Suite 602, Los Angeles, CA 90012 (2130-621-4060

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on  6 / 1 / 2015  _____
*Date*                     *Signature of Petitioner*

BRIAN WRIGHT C.D.C. #AM9524 VS. Warden, CLF-SHAFTER

ADDENDUM TO FORM CV-69 - THE PETITION FOR A WRIT OF HABEAS CORPUS FOR A PRISONER IN STATE COURT CUSTODY (28 U.S.C. §2254)

## A.

## INTRODUCTION

This is an addendum to the Petition for the Writ of Habeas Corpus in the petition Brian Wright vs. Warden, C.D.C. on Form # CV-69

## B.

## ISSUES PRESENTED

The California Court of Appeal and the California Supreme Court have ruled that the trial court did not commit error in its handling of the /Wheeler issue during the selection of the jury.[1] Petitioner disagrees.

A federal habeas corpus can review for habeas corpus relief

---

[1] (People V. Wheeler (1978) 22 Cal.3d 258; Batson V. Kentucky (1986) 476 U.S. 79 (hereinafter, "Batson/Wheeler.")

1

from a state court decision where the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of

clearly established Federal law, as determined by the Supreme Court of the United States;

or

(2) which resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.

An unreasonable application of clearly established federal law, as determined by the

Supreme Court "occurs when a state court 'identifies the correct governing legal principle

from the Court/ \'s decisions, but unreasonably applies that principle to the facts of" the

case before it. In this case, both occurred.

This case presents the following issues:

(1) Did the trial court misapply <u>People v.  Wheeler</u> ((1978) 22 CaI.3d 258) and

<u>Batson v. Kentucky</u> ((1986) 476 U.S. 79) by granting the prosecution's  motion claiming the

defense was selectively excluding prospective female jurors.  When defense counsel was

asked his reason for excluding a particular female jurors, counsel acknowledged that one

of his reasons for the challenge was to achieve a more gender-ba1anced jury? ;

(2)  Did the trial court err by reseating the juror and then refusing to allow the

defense to exercise a peremptory challenge after

acknowledging that defense counsel had provided a legitimate gender-neutral reason for challenging that particular female juror?[2] (3) If the trial court erred by reseating the juror, is that error reversible *per se* or subject to a harmless error analysis?

The Petitioner also raised the question as to whether it was reversible error to reseat the juror eliminated by a peremptory challenge by the defense in such a manner as the juror was keenly aware that the defense had asked her to be removed.?

Appellant argued that the trial judge, and the justices of the California Court of Appeal did, in fact, err. It is the position of the Petitioner that it is that error in the trial court's handling of the issue which violated the appellant's right to a jury trial (U.S. Const., Amend VI), and to due process of law. (U.S. Const., Amends V and   XIV.)

Perhaps one way to frame this issue is whether a defense attorney, in order to secure a fair and balanced jury may use his peremptories in an attempt to secure that fair jury, despite the specific concerns of Batson-Wheeler?

Here, defense counsel was faced with a jury panel with an

---

[2] The prosecutor originally objected under Batson/Wheeler that the bias demonstrated by the defenses' peremptory choices established a bias against Caucasian jurors.  However, the Court found a prima facie case of bias against the female gender. (See Opinion of the California Court of Appeal.)

3

"overwhelming" number or women. He was only attempting to get "some" men on that panel.  There was no malice, or evil intent motivating the exercise of peremptory challenges. He was not acting to "exclude" but to "include" for the purpose of a diverse jury panel.

There is also the issue of whether the trial court may impose, what amounted to a "sanction" harmful to, not just the defense counsel, but to the defendant as well. The appellant would argue the procedures used by this trial judge denied him the right to a fair and impartial jury trial, and to due process of law under the 5th,  6th and 14th amendments to the federal constitution.

Here, the Court both misapplied clearly established Supreme Court precedent, and failed to apply and use the facts of the case.

## C.

### STATEMENT OF FACTS

The appellant Brian Wright, was found guilty of second degree murder (P.C. §187) with a special finding that he personally used a deadly weapon, a hammer, causing the death of the victim. (P.C. §12022(b)(1)). The appellant was also found to have been previously convicted of the crime of robbery in 1989.

4

(Los Angeles Superior Court Case Number: BA002103).

The appellant was sentenced to a 31-years-to-life sentence in state prison.

### 1.   THE TRIAL TESTIMONY

The defendant resided in Los Angeles County. (RT 1214.) After deciding to address his drug problem of long standing. (20 years). He made arrangements for a lengthy stay in a local drug rehabilitation facility.

Petitioner, at the time, lived in a residence owned by his mother.  He formulated a plan whereby he was to sublet his apartment to his friend, Earl Baptiste,[3] and to Baptiste's cousin, Lindval Baptiste (RT 1514) while gone. The two men moved in, as Petitioner moved out.

Unfortunately after making all of the necessary arrangements about the apartment, Petitioner was unexpectedly rejected by the rehabilitation program because he was unable to pass the programs physical.  He was asked to leave.

So, after leaving for the program with some fanfare, Petitioner found himself returned in less than 24 hours.(RT 1283.)

The parties reached a mutual agreement, and decided that

---

[3]   Earl Baptiste was convicted for three felonies, all for cocaine possession. (RT 1510-1511.)

Petitioner would move back in, and the two men would stay as well. (RT 1281, 1514-1514.)   The Petitioner decided to live in the back bedroom at the residence. His girlfriend "Cynthia," was a frequent overnight guess. (RT 1285-1286, 1293.)

When appellant returned to the residence, he discovered that Earl and Lindval were selling rock cocaine at a healthy pace. Soon, the two cocaine dealers were supplying cocaine to the Petitioner in lieu of paying their rent. Petitioner did not sell any drugs. He did not participate in the drug sales, except as an addicted user. (RT 1516-1519.)

Lindval Baptiste was found dead in the home on July 11, 2009. He was found by Earl Baptiste when he returned home between 8:30 and 9:00 a.m. Lindval's body was found blocking the door. Earl had to force his way inside. (1528-1530.)

At trial, Petitioner explained what had happened. He testified that he had been using cocaine and going without sleep for four or five days before the killing. He had been on a cocaine binge. (RT 1222, 2122, 2125.) Both the appellant and his girlfriend had been smoking cocaine on the day of the killing . (1291.)   Appellant testified to having an altercation with Lindval around this time.   Prior to the night of the killing, appellant and Lindval were involved in an altercation in which Lindval struck appellant's knee with a hammer.(RT 1279-1280,

6

2132.) According to appellant, this attack took place hours before he killed Lindval with the hammer. (2184-2185.)

On the night of the killing, appellant attempted to question Lindval about whether he had molested his girlfriend, Cynthia, while she and appellant slept.  He suspected that Lindval had molested Cynthia while he slept.

Appellant confronted Lindval. Lindval did not deny the accusation, but when Faced with the accusation, Lindval laughed in Petitioner's face.  At one point Lindval violently pushed Petitioner.  The push was so hard, appellant flew into the stereo against the wall across the room. When he rose from the floor, appellant was angry. He testified that he "snapped." He was unable to recall what happened after that. He testified, "I don't know what happened." (RT 2125-2127.)  He found it difficult to understand that according to the evidence, he had struck the victim 21 times. Appellant testified further, that he had no intent to kill, and no plan to kill. He had blacked out and was not sure what happened.(RT 2127.)

Dorothy Martin, a crack cocaine addict, stated that she came to the house to purchase $10.00 worth of rock cocaine and smoked it with Petitioner in his bedroom before the killing. She heard someone at the door to the bedroom. Petitioner went to answer it. (RT 1841-1842.) She heard someone talking, and some "pounding"

7

while he was gone.  He returned with a bloody hammer, and saying
they had to leave the house.  (RT 1852-1853.) He asked her to take
the hammer and she did. The hammer was bloody and it smeared her
clothing. (RT 1853-1855.) She gave it back to him as they walked
out. (1856-1857.) On the way out, she saw victim lying on the
kitchen floor. (RT 1866.)


2.  <u>JURY SELECTION AND WHEELER/BATSON MOTION</u>


Once the prosecution objected on a claim of improper use of
the defense peremptories (against Caucasian jurors), the trial
judge declared that there was a *prima facie* case that defense
counsel was exercising peremptories on the basis of group bias,
but not against Caucasians, but against women. The prosecution
challenged the peremptories exercised.[4]  This included Ms. Erin
Wong, a school teacher, with a prospective brother-in-law
employed by the Los Angeles Police Department as a patrol
officer; her cousin was an attorney, and her grandfather was once
mugged. (Vol. #2 Augmented, RT 266-268.)

---

[4]  The prosecutions motion originally included a charge of
discrimination against Asian panel member. However, the court ruled
there was no prima facie case made. This left only the accusation
of gender bias. ( Vol 2, RT augmented, 264-268.)

Defense counsel had exercised 15 peremptories, eight against women. The court then asked the defense attorney to explain his eight peremptories against  female members of the panel. (Vol. #2 Augmented, RT 270-272.) Defense counsel first asked that the record reflect that at the moment (of objection) there were an overwhelming number of women on the jury panel. The court agreed, and the prosecutor agreed. (Vol. #2 Augmented, RT 270-271.) Counsel further stated that he wished he could get some men on the jury. There were only four at that moment. He said he wished for a "more balanced" jury. (Vol. #2 Augmented, RT 271.)[5]

Without further ado, the court declared that the simple statement, alone, was "tantamount" to an admission that peremptories were being exercised on a group bias by the defense.[6] This was not true. The record did not support this "jump" to a conclusion. This was an unreasonable interpretation of the facts. Nonetheless, the court immediately ordered juror

---

[5]

[6]     Under existing law and upon a showing  that opposing counsel improperly exercised peremptory challenges to exclude a member of a cognizable group, the court may dismiss all the jurors thus far selected. (See: Batson v. Kentucky, supra; People v. Wheeler, supra.)

#4748, the last peremptory used by the defense, reseated. Counsel
was not asked to explain any more concerning the exercise of hie
peremptories. (Vol. #2 Augmented, RT 271, 278.) Most damaging to
the defense was that the juror had full knowledge that the
defense had asked her to be disqualified. This, no doubt,
affected her partiality, - adverse to the defense.


### D.

### POINTS AND AUTHORITIES

### I.

### THE TRIAL JUDGES RULING UNDER BATSON/WHEELER

### WAS NOT OBJECTIVELY REASONABLE


It is submitted that the record that defense counsel
exercised peremptories from a group bias is incomplete and
unpersuasive. Whatever his subjective intent, there was,
obviously, an objective reality which must be explored.[7]

It is submitted that neither the People, nor the trial
judge, established an objective *prima facie* case of group bias.

---

[7] Moreover, if subjective intent were to enter into it,
defense counsel's subjective intent was to get a fair jury, with a
fair representation of the community in which the defendant lived.

The defense had exercised 15 peremptories, roughly, only half against women. There were 10 women, and two men in the jury box at the time the prosecution made its motion. (Vol #2 Augmented, RT 269-272, 282.) *Defense counsel had already accepted the panel as constituted.* (Vol. #2 Augmented, RT 266-272.) These facts did not established a *primae facie* case for a Batson/Wheeler violation. In fact, there was never a case made that defense counsel exercised peremptories against caucasian jurors, or against women solely because they were women. The record was simply not there. Counsel's desire for "balance" was not unlawful and was, in fact, beneficial to the process. It did not prove that counsel had exercised peremptories from an impermissible group bias.

The only juror peremptory which defense counsel was required by the court to explain, was as to juror #4748. Defense counsel offered that he had a "gut feeling" that he could not "read" her; he felt no "rapport." She seemed "cold." (Vol. #2 Augmented, RT 270-271, 277-279.) *The judge accepted his explanation and stated it was not a pretext by the defense. He had noticed it too. The court had noticed the same aloofness.* The judge said he felt it was "impossible" to read her, as well. (Vol. #2 Augmented, RT 266-272.) So, there was actually a finding by the judge that the exercise of this peremptory was proper.

11

## II.

### THE PURPOSE OF BATSON/WHEELER IS NOT TO PUNISHMENT
### THE DEFENDANT BY SEATING A BIASED JUROR

It is submitted that even though there was never a proper finding based on evidence that defense counsel exercised any peremptory with any bias for, or against any on a group, the defense, (or rather the defendant) was punished (sanctioned) anyway. Assuming, arguendo, that the judge was correct in saying that the statement by the defense attorney about wanting more men on the jury created a prima facie case, the sanction violated the appellant's constitutional rights. The appellant was punished because of what his attorney said. Punishment of the defendant was never a stated aim of the Batson/Wheeler line of cases. It was to provide both sides with equal opportunity and fairness.

After publicly dismissing juror #4748, the court put her back on the panel. Clearly she knew who had excused her. Now defense counsel had to present evidence, and make argument to a juror who knew counsel had tried to dismiss her. The court helped create a likely biased juror. Stranger yet, if defense counsel did wrong, why punish the appellant whose life was on the line? It is one thing to clear the venire and start all over again. This may punish the attorney who has to do the work all over

12

again not to mention the immediate embarrassment before the jury panel which would conclude counsel did something wrong or unethical in dismissing one of their own.. But, placing a most likely biased juror on the jury does not punish the defense counsel, it punishes the defendant. It affects, and undermines his right to trial by a fair, and impartial. jury, and to due process of law. Surely, re-seating juror #4748, did not implement the purpose of the Batson/Wheeler line of cases. Those cases cannot be read to permit either defense counsel, or the defendant to be punished.

Petitioner cited <u>People v. Willis</u>, ((2002) 87 Cal.App.4th 162) in the state court of appeals. There, the California Supreme Court held trial courts are not limited to dismissing the entire venire as the only remedy in the case of a Batson/Wheeler violation. The courts are now free to fashion other remedies, or sanctions short of dismissing the entire venire in the case of a Batson-Wheeler violation. (Id. at pp. 823-825.) Such was done in this case. Instead of dismissing the entire jury panel, the court, against defense objection (wherein he asked for a new panel, and that if he had done something wrong he would be presented to the state bar), reseated the juror.. But his client should not be made to suffer. with the permission of moving party (a prerequisite), simple re-seated the juror excused by the defense. The court reseated the juror after the juror left the panel knowing that it was the defense which wanted her dismissed. This unavoidably caused prejudice to the appellant, and requires reversal. The <u>Willis</u> court stressed the foreseeable danger where the juror knows who dismissed him, or her, with the disallowed peremptory.

- It is submitted that the Sixth Amendment right to trial by a proper  jury

13

requires that a juror who knows which side dismissed him, or her, cannot be reseated. The _Willis_ Court was correct. This should be the case given the likilihood of prejudice to person on trial. Before a court may reseat a juror excused by an improper peremptory, caution must be taken to ensure against undue prejudice to the party who made the unsuccessful peremptory challenge, in this case, the defense. (_Willis_, supra.)

The _Willis_ court cited _People V. Williams_ ( (1994) 26 Cal.App.4th Supp. 1 (Williams)), approvingly. The _Williams_ court suggested that after an objection pursuant to Batson/Wheeler was raised, further peremptory challenges would be made at sidebar outside the jury's presence, so that any successful _Wheeler_ objection could be ruled on, and any improperly challenged jurors who are retained, are retained without knowledge as to which party had attempted their removal. (_Willis_ at p. 819.)

The _Willis_ court, citing _Williams_, observed that the trial court should conduct preliminary, peremptory challenges, and _Batson/Wheeler_ motions, - at the sidebar, - thus preventing potential bias by the challenged juror against the party whose attempt to excuse the juror was unsuccessful. (_Willis_ at p. 819.)

The _Willis_ court recognized the problem in reseating an excused juror and disapproved of this as a Batson/Wheeler remedy. The court recognized that reseating a juror with the knowledge

14

that either the defense, or the prosecution wanted them dismissed
was likely to create prejudice and bias in that juror.

The California Court of Appeal and the California Supreme
court left the problem of the reseated juror to the discretion of
the trial court, meaning that there are no guidelines.  The
procedure was to be handled in a completely arbitrary manner.

III.

SIGNIFICANT PREJUDICE RESULTS WHERE THE CHALLENGED
JUROR IS RESEATED WITH THE KNOWLEDGE OF THE IDENTITY
OF THE PARTY EXERCISING THE PEREMPTORY AGAINST THAT JUROR

A single juror resentful of the fact that the defense did
not want him, or her on the jury panel naturally gives rise to
likely prejudice in that juror. The substantial likelihood of the
existence of this bias, even in a single juror, is prejudice
sufficient to reversal. The criminal defendant's right to a jury
trial affords him the right to the unaffected decision of each of
the twelve jurors. As stated in People V. Holloway ((1990)50
Cal.3d 1098) even one prejudiced juror is sufficient for reversal
of conviction:

> " . . . . [A] verdict of guilty must be reversed or
> vacated 'whenever . . . the court finds a substantial
> likelihood that the vote of one or more jurors was

15

influenced by exposure to prejudicial matter relating to the defendant or to the case itself that was not part of the trial record on which the case was submitted to the jury." (People V. Holloway (1990) 50 Cal.3d 1098, 1109-1110.)

Here, the reseated jury cannot be expected to forget that the defense tried to have her dismissed from the panel, and was unsuccessful in doing so, under circumstances suggesting the defense counsel acted improperly.  Asking that a juror be dismissed is not an act which will endear that juror to the attorney insisting on the juror's dismissal.


CONCLUSION

As noted herein, neither the prosecution, nor the court established a "prima facie" Batson/Wheeler violation. Defense counsel's subjective intent does not provide the evidence, - his actions do. There was no objectively reasonable case made for a Batson/Wheeler violation.

But assuming, arguendo, that there was a violation, the remedy was improper and violative of the defendant's right to a jury trial and to due process of law. The California Court of Appeal ruled that Willis authorizes only a discretionary ruling by the trial judge. He, or she, "may" consider the bias to the

16

defendant. But a judge's discretion is not the hallmark of protected constitutional rights such as the 6th amendment right to a trial by jury, or to the 5th and 14th amendments right to due process of law.

The Court of Appeal in <u>Willis</u> is correct that <u>Willis</u> leaves the matter to the discretion of the trial judge and to some extent, that of the prosecution. But <u>Willis</u> should be the state of the law and the procedure used in this case should be banned. That is, where there is a sanction to be imposed on the defense, reseating a juror, dismissed with a peremptory, under circumstances certain to communicate to the reseated juror that the appellant had asked for her dismissal should be banned as depriving a defendant of his right to a fair and impartial jury and jury trial.

Not only does this procedure violate constitutional rights, it does so to what end? It is seemingly only for the purpose of judicial economy. The trial does not have to begin again.   A new jury panel does not have to be sent for. This is a poor reason when balanced against the defendant's constitutional right to a jury trial.

As it stands after the Court of Appeals decision in this case, the prosecution chooses whether to reseat the juror. It is submitted that the entire procedure should be banned.

17

Alternatively, (in the interest of judicial economy) a juror should be reseated only where both the defense, and the prosecution agree to it. Otherwise, a new panel must be impaneled.

It is further submitted that the constitutional error (i.e., affecting the 6th amendment right to trial by jury, is of such a constitutional dimension as to prevent a "harmless error analysis. This should fall under a "reversible per se" analysis.

The federal district court is asked to overturn the conviction in this case for the afore-stated reasons. A new trial is requested for the petitioner.

Date: _____6/4/2015_____ 2015

_____
FRANK DUNCAN
Attorney for Petitioner

Postscript:

**THE PETITION FOR REVIEW WAS DENIED ON 5/21/2014**

California Supreme Court

**Court data last updated: 06/03/2015 08:12 PM**
Case Summary     Docket       Briefs
Disposition    Parties and Attorneys      Lower Court

**Case Summary**

Supreme Court Case:      S202433
Court of Appeal Case(s):   Second Appellate District, Div. 3
B228640
Case Caption:     PEOPLE v. WRIGHT
Case Category:     Review - Criminal Appeal
Start Date:   05/11/2012
Case Status:  case closed
Issues:     Petition for review after the Court of Appeal affirmed a judgment of
conviction of a criminal offense. This case presents the following issues: (1) Did the trial
court misapply People v. Wheeler (1978) 22 Cal.3d 258 and Batson v. Kentucky (1986) 476
U.S. 79 by granting a prosecution motion claiming the defense was selectively excluding
prospective Caucasian jurors when defense counsel, asked his reason for excluding a
particular female Caucasian juror, acknowledged that one of his reasons for the challenge
was to achieve a more gender-balanced jury? (2) Did the trial court err by reseating the
juror and then refusing to allow the defense to exercise a peremptory challenge after
acknowledging that defense counsel had provided a legitimate gender-neutral reason for
challenging that particular female Caucasian juror? (3) If the trial court erred by reseating
the juror, is that error reversible per se or subject to a harmless error analysis?
Disposition Date:    05/21/2014
Case Citation:     none

NOTE: The statement of the issues is intended simply to inform the public and the press of
the general subject matter of the case. The description set out above does not necessarily
reflect the view of the court, or define the specific issues that will be addressed by the court.
Cross Referenced Cases:

2nd Appellate District

Court data last updated: 06/03/2015 08:12 PM
Case Summary      Docket      Briefs  Scheduled Actions
Disposition   Parties and Attorneys      Trial Court

Docket (Register of Actions)
The People v. Wright
Division 3
Case Number B228640

Date   Description   Notes
11/08/2010   Notice of appeal lodged/received (criminal).      N/A filed 10.22.10 (Brian Wright)
PVT CO
11/08/2010   Appellant notified re: right to counsel.
11/08/2010   Original entry stricken - sequence no. not removed.      financial affidavit inadvertently sent; aplt has retained counsel
12/21/2010   Record on appeal filed.      c-1 (231 pgs) r-3, p-1
01/21/2011   Motion/application to augment record filed.      by appellant (3 rt dates & rt of complete voir dire) with request to extend time to file AOB.
01/26/2011   Augmentation granted. (See order.)
01/31/2011   Augmentation order faxed to:      crim appeals & crs dt of order 1-26-11
02/09/2011   Notice to reporter to prepare transcript.      2/1/11
03/01/2011   Augmented record filed.      r-2 (304 pgs) dtd 6-28, 29, 30-2010, 7-1-2010.
04/01/2011   Requested - extension of time

Appellant's opening brief. Requested for 05/02/2011 By 31 Day(s)
04/06/2011   Granted - extension of time.

Appellant's opening brief. Due on 05/02/2011 By 31 Day(s)
05/02/2011   Requested - extension of time

Appellant's opening brief. Requested for 06/02/2011 By 31 Day(s)
05/03/2011   Granted - extension of time.

Appellant's opening brief. Due on 06/02/2011 By 31 Day(s)
06/02/2011   Requested - extension of time

Appellant's opening brief. Requested for 07/05/2011 By 33 Day(s)
06/03/2011   Granted - extension of time.

Appellant's opening brief. Due on 07/05/2011 By 33 Day(s)
06/15/2011     Appellant's opening brief.     Defendant and Appellant: Brian Wright
Attorney: Frank Duncan
07/15/2011     Requested - extension of time

Respondent's brief. Requested for 08/15/2011 By 31 Day(s)
07/18/2011     Granted - extension of time.

Respondent's brief. Due on 08/15/2011 By 31 Day(s)
08/15/2011     Requested - extension of time

Respondent's brief. Requested for 09/13/2011 By 29 Day(s)
08/17/2011     Granted - extension of time.

Respondent's brief. Due on 09/13/2011 By 29 Day(s)
09/13/2011     Requested - extension of time

Respondent's brief. Requested for 10/13/2011 By 30 Day(s)
09/14/2011     Granted - extension of time.

Respondent's brief. Due on 10/13/2011 By 30 Day(s)
10/13/2011     Requested - extension of time

Respondent's brief. Requested for 11/14/2011 By 32 Day(s)
10/17/2011     Granted - extension of time.

Respondent's brief. Due on 11/14/2011 By 32 Day(s)   NO FURTHER EXTENSIONS WILL BE
GRANTED. ALDRICH, ACTING P.J.
11/22/2011     Respondent notified re failure to file respondent's brief.
12/21/2011     Respondent's brief.     Plaintiff and Respondent: The People
Attorney: Office of the Attorney General
12/22/2011     Change of address filed for:     Office of the Attorney General old phone:
213-897-2712 new phone: 213-897-2000 old fax: 213-897-6496 new fax: {blank} old email:
{blank} new email: docketinglaawt@doj.ca.gov
01/11/2012     Requested - extension of time

Appellant's reply brief. Requested for 01/31/2012 By 21 Day(s)
01/11/2012     Granted - extension of time.

Appellant's reply brief. Due on 01/31/2012 By 21 Day(s)
01/27/2012     Appellant's reply brief.     Defendant and Appellant: Brian Wright
Attorney: Frank Duncan     0 & 4
01/27/2012     Case fully briefed.
01/30/2012     Calendar notice sent. Calendar date:
02/17/2012     Filed proof of service.     amended to appellant's reply brief

02/27/2012    Cause argued - submission deferred. (See note field.)          In open court, submission deferred pending further order of the court.

03/09/2012    Exhibits received from county clerk.          One env. (BA358919).

03/19/2012    Submission order filed.          Submission having been deferred at oral argument on February 27, 2012 in the above-entitled matter at the court's request, the cause is submitted this date. The matter stands submitted as of March 19, 2012. (PK)

03/19/2012    Cause submitted.

04/04/2012    Opinion filed.          (Signed Published)
The judgment is affirmed. 12 pages (Kitching, J., Croskey, J., Klein, P.J.)

05/10/2012    Service copy of petition for review received.          Wright

05/14/2012    Record transmitted to Supreme Court.          1x6"

06/26/2012    Ext. by Supreme Court re: petition for hearing filed:

07/18/2012    Exhibits returned to county clerk.          One env. (BA358919).

**7/19/2012, Sup. Ct. p/u by Sharon DeSilva.

07/18/2012    Petition for review granted in Supreme Court.

05/27/2014    Record returned from Supreme Court.

07/29/2014    Supreme Court order filed re:          Order issued 5-21-14, Review in the above entitled matter is dismissed. (Cal. Rules of Court, rule 8.528(b).)

07/29/2014    Remittitur issued.

07/29/2014    Case complete.


Click here to request automatic e-mail notifications about this case.


Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use | Privacy    © 2014
Judicial Council of California / Administrative Office of the Courts

## PROOF OF SERVICE

      I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my address is_____

_____ .

      On_____, I served the foregoing document described as:_____

_____

_____

_____

_____on the interested parties in said action, by placing a true copy thereof enclosed in a sealed envelope with first class postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as follows:

[x ]   (BY Priority Mail)

    [x  ]  I deposited such envelope in the mail at Los Angeles, California, the envelope was mailed with first class postage thereon fully prepaid.

    [ x ]  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with US postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on_____ at Los Angeles, California.

      I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

                               By:_____

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my address is _5750 ½  CLEMSON ST_
_Los Angeles, CA 90016_                                                                                        .

On_____, I served the foregoing document described as:_____

_Petition for Writ of Habeas Corpus by ~~State~~ all Inmate in_
_State Custody_

_____on the interested parties in said action, by placing a true copy thereof enclosed in a sealed envelope with first class postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as follows:

_Kamala Harris_                              _BRIAN WRIGHT # AM9524_
_State Atty General - California_       _C/O: FRANK DUNCAN_
_300 So. Spring Street_                    _880 W. FIRST ST   Ste 602_
_Los Angeles, CA 90013_                  _Los Angeles, CA 90012_

[x ]   (BY Priority Mail)

    [x ]  I deposited such envelope in the mail at Los Angeles, California, the envelope was mailed with first class postage thereon fully prepaid.

    [ x ]  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with US postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on_____ at Los Angeles, California.

    I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

                By:_____



